# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Lee C. Pedersen, individually;                    Civil No. 05-748 (DWF/SRN)
ReleasaGen Manufacturing, Inc.,
a Minnesota corporation; and
Cut Kleen Chem, Inc., a Minnesota
corporation,

                Plaintiffs,

v.                                                **MEMORANDUM**
                                                  **OPINION AND ORDER**
Akona, LLC, a Delaware limited
liability company and Stephen H. Hodges,
individually,

                Defendants.

---

Shane C. Perry, Esq., Shawn M. Perry, Esq., and Stewart R. Perry, Esq., Perry, Perry, & Perry, counsel for Plaintiffs.

Cyrus A. Morton, Esq., and Edward M. Laine, Esq., Oppenheimer Wolff & Donnelly LLP, counsel for Defendants.

---

## Introduction

The above-entitled matter came before the undersigned United States District Court Judge on March 27, 2006, pursuant to a Motion for Partial Summary Judgment on All Claims Except Joint Inventorship brought by Defendants Akona, LLC, a Delaware limited liability company, and Stephen H. Hodges, individually (collectively, the "Defendants"). In the Complaint (the "Complaint"), Plaintiffs Lee C. Pedersen, individually, ReleasaGen Manufacturing, Inc., a Minnesota corporation, and Cut Kleen Chem, Inc., a Minnesota corporation (collectively, the "Plaintiffs") allege twelve counts: (1) correction of a patent;

(2) declaratory judgment; (3) patent infringement; (4) unjust enrichment; (5) implied

contract; (6) conversion; (7) fraud and misrepresentation; (8) negligent misrepresentation;

(9) respondeat superior; (10) breach of contract; (11) breach of the covenant of good faith

and fair dealing; and (12) civil conspiracy and illegal concert of action.  For the reasons set

forth below, Defendants' motion is granted.

## Background

Akona, LLC ("Akona"), founded by George Howell, is a manufacturer of various

products including a sweeping compound known as Kleen Sweep.  Sweeping compounds are

simple, low-tech products comprised of sand, sawdust, oil, and dye.  The compound is

generally spread on hard surface floors and then swept up.  Due to environmental concerns,

in the mid-1990s, Akona attempted to develop a new floor-sweeping compound that did not

contain oil.  By 1996, Akona had developed a water-based floor-sweeping compound.  After

developing the water-based version of Kleen Sweep, Akona landed accounts with major

national retailers such as Ace Hardware and True Value, and sales reached $500,000 to

$600,000 a year.

Kleen Sweep developed a problem known as "dry out," in which the water would

evaporate if the bag was left open or if the compound was left on the floor too long, causing

the product not to perform as intended.  Akona made several unsuccessful attempts to solve

the problem.  Eventually, Kleen Sweep was ultimately improved by adding a super-

absorbent, a polymer that is known to attract or gel water and which is commonly used to

make diapers.  The super-absorbent retained the water in the compound, preventing the dry-

out problem.  The parties dispute whose idea it was to add super-absorbent to Akona's Kleen Sweep formula.

Akona's owner, Bill Howell, and Akona employee, Steve Hodges, both assert that Hodges' came up with the idea to add super-absorbent to Kleen Sweep.  Specifically, Hodges testified that he thought of adding a super-absorbent because he had seen a demonstration using a super-absorbent a few years earlier given by Plaintiff Lee C. Pedersen ("Pedersen") and one of Pedersen's associates, Bill Minkema.  (Affidavit of Cyrus A. Morton in Support of Defendants' Motion for Partial Summary Judgment on All Claims Except Joint Inventorship ("Morton Aff."), ¶ 3, Ex. 1 Deposition of Stephen Hodges ("Hodges Dep.") at 36.)

Pedersen, however, maintains that he came up with the idea to add  super-absorbent to Kleen Sweep.[1]  According to Petersen, in the spring of 1998, he was at the Akona facility when he noticed Howell, Hodges, and David Watrud, Akona's vice-president of sales, standing by a pallet of Kleen Sweep that had been returned by Menards.  Pedersen described this incident when asked how he learned about the problem of dry-out:

> I'm not sure if it was dry-out or too wet.  The incident leading up to my
> talking to Mr. Hodges, I was over there extracting equipment, I walked by, I
> was walking through the plant, and about four people were standing around a

---

1    Pedersen had experience working with super-absorbents from previous employment at General Mills and Biosorb.  In 1976, Pedersen and his wife formed Plaintiff ReleasaGen Manufacturing Inc. ("ReleasaGen") for the purpose of selling chemical products Pedersen had acquired from General Mills.  Pedersen and a partner later formed Plaintiff Cut Kleen Chem, Inc.

> skid of bags.  On the floor near that skid there was green dye.  And as I was walking by I said to Steve, I said, "You have a problem?" and he said, "Yes." And I said, "What" – well, he said, "We're having trouble holding the water." And my comment was, "I can fix that for you."

(Affidavit of Shawn M. Perry in Support of Plaintiffs' Memorandum in Opposition to Motion for Summary Judgment ("Perry Aff."), ¶ 4, Ex. F Deposition of Lee C. Pedersen ("Pedersen Dep.") at 25.)

Pedersen claims that two of Akona's employees have corroborated his testimony about this incident.  Sharon David, an Akona employee, testified as follows:

> I was headed back to the shipping department, and that day Menard's had returned a pallet of the sweeping compound.  And I walked back there and I noticed George, Mr. Howell, and Mr. Hodges, and I believe Andy Dosch, our maintenance and troubleshooter down there, was standing around this pallet, and I just walked up to see what was going on, and Steve was concerned that, you know, the pallet, the bags on the pallet were wet.  George was all upset, and they were trying, they were discussing, you know, what could be done with it, and Lee happened to walk by and Steve mentioned, or he asked what was going on, and Steve just mentioned that they were having a problem with the Kleen Sweep, the water is settling out, and Lee said that he possibly had a solution that would help solve the problem.

(Perry Aff., ¶ 4, Ex. B Deposition of Sharon David ("David Dep.") at 14.)  Additionally, when asked who came up with the solution to the Kleen Sweep problem, Watrud responded, "Well, it was based on the material that Mr. Pedersen provided, and it was a pretty dramatic improvement."  (Perry Aff., ¶ 4, Ex. I Deposition of David Watrud ("Watrud Dep.") at 42.) Further, when asked whether he recalled the incident where several people were standing around the returned pallet or skid of bags of Kleen Sweep in early 1998, Watrud replied:

> I can recall that Mr. Pedersen – I can recall the first time that I recall discussions that involved myself with Mr. Pedersen were in the shop.  I don't

4

specifically recall that it was stuff leaking on the floor, although we had that problem. And Mr. Pedersen joined into the conversation and said maybe I can help you with that.

(*Id.*)

The parties agree that Hodges called Pedersen to request a sample of super-absorbent and that Pedersen conducted experiments using the super-absorbent in Kleen Sweep. Pedersen contends that the cost considerations of developing the new floor-sweeping compound required significant experimentation that involved changing the amounts and ratios of the other ingredients. (Affidavit of Lee C. Pedersen ("Pedersen Aff.") at ¶ 5.) Pedersen contends that, without any direction from Hodges or Akona, he developed the experiments, conducted the experiments, conducted a cost analysis of the raw materials and final products, determined how to blend super-absorbent with the other raw materials, and evaluated the results in written reports. (*Id.* at ¶ 7.) Pedersen contends that he suggested to Hodges and Howell that he add additional water to reduce the cost of manufacturing the product as much as possible and proposed experimenting with adding an additional 5%, 10%, and 15% water. (*Id.*) Hodges admitted that Pedersen conducted the testing, but asserts that he instructed Pedersen to attempt to add more water to the formula. (Hodges Dep. at 49.) The culmination of the testing resulted in a Kleen Sweep formula that changed the percentages of each ingredient, including 1% super-absorbent and 10% water. (Morton Aff., ¶ 7, Ex. 5 at P0082.)

Shortly after beginning the testing, on May 26, 1998, the parties signed a Mutual Confidentiality and Non-Disclosure Agreement ("NDA"). The NDA stated that,

5

"[d]iscussions are anticipated between representatives of our companies to explore the possibility of cooperation between ReleasaGen . . . and Akona."  (Morton Aff., ¶ 13, Ex. 11.)  The NDA further stated that, "[i]t is anticipated that in the future detailed discussions it [sic] will be necessary for ReleasaGen . . . and Akona . . . to disclose to each other confidential proprietary technical and business information ("Information") relating to their respective products and processes and related matters."  (*Id.*)  The NDA stated that confidentiality obligations shall apply, "only to such Information that is marked 'confidential' or by other appropriate legend."  (Morton Aff., ¶ 13, Ex. 11.)  The NDA contained a non-license provision which provided:

> No disclosure made under this Agreement constitutes the grant of any right or license, either expressed or implie[d], to any patented or unpatented technology or know-how or other information contained in the disclosure.

(Morton Aff., ¶ 13 Ex. 11 at P0010.)

It is undisputed that Pedersen's work in developing a water-based floor-sweeping compound was done in exchange for compensation.  Akona paid Petersen $25 per hour for his time working on the project.  Pedersen began his work on May 11, 1998, and completed it May 29, 1998.  In an invoice dated June 3, 1998 (the "invoice"), Pedersen billed Akona $1,450 for Pedersen's time and expenses, invoiced as a "consulting fee for developing sweeping compound."  (*Id.* at Ex. 5 and 12.)  Akona paid the invoice.

In August 1998, Akona began selling the new floor-sweeping compound under the name Kleen Sweep Plus.  In 1999, sales reached $1 million and thereafter ranged from $840,000 to $1.2 million per year through November 2005.  In September 1998, Hodges

6

applied for a patent, claiming that he was the sole inventor of the new water-based sweeping compound. The Patent Trademark Office ("PTO") initially rejected the application.

Hodges subsequently contacted Pedersen to request assistance in responding to the rejection. Pedersen testified that he told Hodges that he, Pedersen, should be listed on the patent. (Pedersen Dep. at 117.) Pedersen testified that Hodges replied, "[w]e're working on it" and that Pedersen was left with the "comfortable feeling" that his name would be listed on the patent. (Pedersen Dep. at 119.) Pedersen assisted with the patent application and on July 4, 2000, the PTO issued the '891 patent to Hodges. Hodges was listed as the sole inventor and Akona was listed as assignee.

The record reveals that Akona made a written offer to Pedersen for a long-term suppliership of super-absorbent in exchange for the name of the source of the supply. (Morton Aff., ¶ 15 Ex. 13.) Pedersen made a counteroffer suggesting a sole-supplier arrangement and a commission for each pound of Kleen Sweep sold for 60 months. (Pedersen Dep. at 89; Morton Aff., ¶ 16, Ex. 14 at P0088.) Akona rejected Pedersen's proposal. The parties did not enter into a written agreement, but Akona placed an order for half a truckload of Pedersen's super-absorbent. (Morton Aff., ¶ 17, Ex. 15.) Akona continued to place orders for over three years until the end of 2001, when Akona purchased super-absorbent from another supplier at a lower price.

Pedersen testified that during the time period when the parties rejected each others' written proposals, he did not give Akona any indication that Akona could not make their product without his permission. (Pedersen Dep. at 89.) Pedersen further admits that he

7

never again raised the issue of being paid a royalty or commission after his counteroffer was rejected.  (*Id.* at 89.)  Pedersen never attempted to patent the new Kleen Sweep formula and never indicated to Akona that it would owe him a royalty if Akona obtained a patent.  (*Id.* at 110, 112.)

Additionally, Pedersen did not tell Hodges that Hodges should not be listed on the patent or that Hodges was not an inventor.  (*Id.* at 117–18.)  Pedersen also did not tell Akona that Akona could not produce Kleen Sweep or that Akona would owe him a royalty if Akona produced Kleen Sweep after Hodges informed Pederson of the '891 patent's issuance in 2000.  (*Id.* at 141–42.)  Even after Pedersen was replaced as a supplier at the end of 2001, Pedersen did not demand that Akona pay a royalty or stop producing Kleen Sweep.  (*Id.* at 146–47.)

Akona again purchased super-absorbent from Pedersen in 2003.  (Pedersen Dep. at 150–52.)  During the discussions about the purchase, Pedersen never mentioned an alleged oral contract between the parties or indicated that Akona owed Pedersen money to continue making Kleen Sweep.  (*Id.* at 155.)  In late 2003 to early 2004, Akona contacted Pedersen to supply super-absorbent, although Akona ultimately did not make a purchase.  (*Id.* at 155.) Pedersen never raised the issue of the patent or any alleged oral contract during this communication either.  (*Id.* at 161.)

Pedersen then initiated this lawsuit, claiming that he is the sole inventor of the '891 patent and that the parties had an oral agreement beyond Pedersen's $25 hourly compensation, plus expenses, for development of a viable water-based floor-sweeping

8

compound.  Specifically, Pedersen contends the parties orally agreed that:  (1) ReleasaGen would be the sole supplier of the raw super-absorbent for a period of five years; and (2) Akona would "protect [Pedersen's] interests in the formulas."  (Pedersen Dep. at 136, 114.)  Akona denies any such oral agreement.  Both Howell and Hodges testified that they never made any long-term commitments to purchase raw materials from any suppliers.

Pedersen claims that the alleged oral agreement was confirmed in writings and/or by testimony.  Pedersen contends that the agreement for ReleasaGen to be the sole supplier of the raw super-absorbent was set forth in the invoice, which stated in part:

> PURPOSE:   DEVELOPING A SWEEPING COMPOUND FOR AKONA
>            WITH SUPERIOR WATER RETENTION.
>
> COMPENSATION: Compensation agreed upon by George Howell, Steve
>               Hodges and Lee Pedersen:
>
>               $25 per hour, plus expense
>
>               *Raw material is to be purchased from ReleasaGen
>               Mfg Inc* (Product name: ReleasaGen WBH ) see
>               attached letter for pricing.

(Morton Aff., Ex. 5 at P0077 (emphasis added).)  Additionally, Pedersen points to his counterproposal, in which he stated, "[t]his is an alternative to the *original accepted proposal* and your return proposal."  (Morton Aff., ¶ 16, Ex. 14 at P0088 (emphasis added).)  Pedersen testified that the "original accepted proposal" referred to the alleged oral agreement.  (Pedersen Dep. at 88.)

Pedersen also points to Watrud's deposition testimony in support of his contention that the alleged exclusive purchase arrangement was part of the method by which Akona

compensated Pedersen for the development and use of the invention:

> Q.  Do you see in paragraph 4 where it says, "Akona, LLC agrees to [sic] that it will not enter into a direct purchase agreement with any manufacturer of the ReleasaGen"
>
> . . .
>
> Q.  Do you recall if that was a term in the final agreement?
>
> A.  My recollection is it was, because that was a very important piece to Mr. Pedersen, and the product was purchased through him.  That's my recollection at least of how things got started.
>
> . . .
>
> Q.  Do you recall that he [Pedersen] wanted to be the sole supplier?
>
> A.  Oh, yeah.  Yes.
>
> Q.  And you understood that the sole supplier proposal was basically Mr. Pedersen's way of getting compensated for developing this product?
>
> . . .
>
> A.  Yeah, he wanted to make sure he got compensated for the work he had done and the use of the product.

(Perry Aff., ¶ 4, Ex. I Deposition of David Watrud ("Watrud Dep.") at 22-23, 48–49.)

Hodges testified that he did not remember "one way or the other" whether the sole supplier agreement may have been part of the agreement.  (Hodges Dep. at 51–52.)

Akona brought this motion for partial summary judgment, asserting that the Court should dismiss all counts in the Complaint, except 1 and 2, and that the Court should issue a finding of zero damages.  Akona contends that:  (1) the alleged five-year oral contract violates the statute of frauds or cannot be proven to exist; and (2) the undisputed facts and Pedersen's admissions demonstrate that either Pedersen had a duty to assign any patent

rights to Akona or Akona acquired a shop right or implied license to manufacture and sell

Kleen Sweep with super-absorbent.  Alternatively, regarding Counts 1 and 2, Akona

contends that Pedersen cannot prove that Hodges is not an inventor and Pedersen is, at best,

only a joint inventor and, therefore, not entitled to damages.

**Discussion**

**I.      Standard of Review**

Summary judgment is proper if there are no disputed issues of material fact and the

moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The Court

must view the evidence and the inferences, which may be reasonably drawn from the

evidence in the light most favorable to the nonmoving party.  *Enterprise Bank v. Magna

Bank of Missouri*, 92 F.3d 743, 747 (8th Cir. 1996).  However, as the Supreme Court has

stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural

shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed

'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp.

v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of

material fact and that it is entitled to judgment as a matter of law.  *Enterprise Bank*, 92 F.3d

at 747.  The nonmoving party must demonstrate the existence of specific facts in the record

which create a genuine issue for trial.  *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th

Cir. 1995).  A party opposing a properly supported motion for summary judgment may not

11

rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

## II.    Statute of Frauds

The Minnesota Statute of Frauds delineates that a contract "that by its terms is not to be performed within one year from the making thereof" is unenforceable unless "such agreement, or some note or memorandum thereof, expressing the consideration, is in writing, and subscribed by the party charged therewith." Minn. Stat. § 513.01.  The statute of frauds expresses the public policy of preventing enforcement of contracts by means of fraud and perjury that were never in fact made. *Radke v. Brenon*, 134 N.W.2d 887, 890 (1965).  A memorandum is sufficient to comply with the statute of frauds when it sets forth all the essential terms of the agreement so that it may be proved on the basis of such memorandum without resort to parol evidence. *In re Petroleum Carriers Co.*, 121 F. Supp. 520, 523 (D. Minn. 1954).  Several papers may constitute a sufficient memorandum to meet the requirements of the statute of frauds if, taken together and without the need of parol evidence to connect them, they make out a complete statement of the transaction. *Id.*  Additionally, the Minnesota Uniform Commercial Code (UCC) requires that a contract for the sale of goods for the price of  $500 or more be in writing to be enforceable.  Minn. Stat. § 336.2-201(1).

Akona asserts that the alleged oral contract violates the statute of frauds because by its terms, it cannot be completed in one year and is a contract for the sale of goods for more than $500.  Specifically, Akona contends that Pedersen's assertion that Akona agreed

12

to purchase super-absorbent exclusively from ReleasaGen for five years places the alleged contract squarely within the statute of frauds.  Further, Akona contends that Pedersen's assertion that Akona agreed to the "protection of [Pedersen's] rights" could not be performed in less than a year.  Akona contends that to the extent "protection of [] rights" is assumed to include the patent rights at issue, no patent right can be protected in less than one year because the patenting process itself takes more than one year.  Finally, Akona asserts that the alleged contract is for the sale of goods—super-absorbent—and that the price exceeds $500 because a truckload of super-absorbent costs $8,000 to $10,000.

Plaintiffs first assert that the alleged agreement to protect Pedersen's intellectual property rights is not barred by the statute of frauds because the parties entered into a written, binding contract—the NDA—that protected Plaintiffs' intellectual property rights. Additionally, Plaintiffs assert that the alleged agreement requiring Akona to exclusively purchase super-absorbent from Plaintiffs for a minimum of five years is documented by sufficient testimonial admissions and writings to raise a triable issue of fact on whether the statute of frauds was satisfied.  Plaintiffs specifically contend that the invoice, Pedersen's counterproposal, Watrud's testimony, and the NDA establish the existence of the alleged agreement requiring Akona to exclusively purchase super-absorbent from Plaintiffs for a minimum of five years.

The Court finds that the alleged oral contract is not enforceable under the statute of frauds.  The Court finds that Pedersen made no disclosure of "Information" to Akona pursuant to the NDA.  The NDA stated that confidentiality obligations shall apply, "only to

13

such Information that is marked 'confidential' or by other appropriate legend." (Morton

Aff., ¶ 13, Ex. 11.) Pedersen admits that he did not share any confidential information

acquired prior to the inception of the project. (Pedersen Dep. at 66–67, 68.) Additionally,

Pedersen did not mark any of the reports he produced during the project as confidential.

Further, Pedersen disclosed the use of super-absorbent in a series of reports before signing

the NDA. (Morton Aff., ¶¶ 8–11, Exs. 6–9.) The Court rejects Pedersen's contention that

the confidential labeling requirement for disclosure of information does not apply to the

non-license provision of the NDA. Nothing in the NDA supports Pedersen's contention.

Regardless, Pedersen did not make any disclosures under the agreement.

The Court also finds that, as a matter of law, the NDA was not a contract governing

ownership of any intellectual property developed during Pederson's employment by Akona.

Pedersen's employment, begun slightly before May 11, was largely completed by May 26

when the NDA was executed. The NDA stated that, "[d]iscussions are anticipated between

representatives of our companies to explore the possibility of cooperation between

ReleasaGen . . . and Akona." (Morton Aff., ¶ 13, Ex. 11.) The NDA further stated that, "[i]t

is anticipated that in the future detailed discussions it will be necessary for ReleasaGen . . .

and Akona . . . to disclose to each other confidential proprietary technical and business

information ("Information") relating to their respective products and processes and related

matters." (*Id.*) According to the plain language in the NDA, the Court finds that the NDA is

not an employment agreement between Pedersen and Akona wherein Pedersen expressly

reserved any intellectual property rights in the work for which Akona hired him.

14

Next, the Court finds that, as a matter of law, the alleged agreement requiring Akona to exclusively purchase super-absorbent from Plaintiffs for a minimum of five years is not sufficiently documented by the writings and testimony to raise a triable issue of fact on whether the statute of frauds was satisfied.  None of the evidence that Pedersen points to in support of his position describes the essential terms of the alleged oral contract.  Pedersen cites the invoice in which he wrote "[r]aw material is to be purchased from ReleasaGen Mfg Inc." (Morton Aff., ¶ 7, Ex. 5.)  Yet this statement does not indicate any duration of time, let alone the alleged five-year term.

Moreover, the statement in Pedersen's counterproposal that "this is the alternative to the original accepted proposal and your return proposal" does not indicate any essential terms.  (Morton Aff., ¶ 16, Ex. 14.)  Additionally, the fact that the NDA delineated that all confidentiality and non-use obligations shall terminate seven years after disclosure is irrelevant.  The NDA is not a supply agreement and does not specify a five-year term.  Finally, Watrud's testimony is not a writing contemporaneous with the formation of the alleged oral contract and constitutes parol evidence.  Moreover, Watrud's testimony makes no mention of a five-year term for the alleged oral contract.  The Court finds that the evidence Pedersen points to fails to delineate the essential terms of the alleged oral contract.

The Court also finds that the invoice, counterproposal, and NDA fail to refer to one another, and that there is no indication that they are related to the alleged oral contract.  Further, the Court finds that the various written evidence, with the exception of the NDA,

15

was not signed by Akona and that Akona therefore did not agree to the terms contained therein. Additionally, the fact that Akona purchased super-absorbent exclusively from ReleasaGen for three years is irrelevant. *See Kramer v. Bruns*, 396 N.W.2d 627, 630 (Minn. Ct. App. 1986) (holding that partial performance does not excuse an oral contract from the one-year time limit of Minn. Stat. § 513.01). Accordingly, summary judgment in favor of Akona is appropriate on Counts 7, 8, and 10-12 for fraud and misrepresentation, negligent misrepresentation, breach of contract, breach of the covenant of good faith and fair dealing, and civil conspiracy and illegal concert of action.

Alternatively, Akona asserts that even if the statute of frauds were not applicable, no reasonable jury could find that Akona assented to a five-year supply agreement or protection of rights. The Court agrees. Here, Akona offered a long-term suppliership and Pedersen rejected it. Thereafter, Pedersen began supplying super-absorbent order by order. Additionally, the term "protection of rights" is far too vague to enforce. *See, e.g. Hunt v. IBM*, 384 N.W.2d 853, 856–57 (Minn. 1986) (finding that language was too indefinite to constitute an offer of a contract). Thus, no reasonable jury could find that the parties entered into an agreement requiring Akona to exclusively purchase super-absorbent from Plaintiffs for a minimum of five years or protect Pedersen's intellectual property rights. Thus, the Court finds that summary judgment in favor of Akona is appropriate on Counts 7, 8, and 10–12.

## III.    Hired to Invent

Although there is a presumption that an inventor owns his invention, "employers may

still claim an employee's inventive work where the employer specifically hires or directs the employee to exercise inventive faculties." *Teets v. Chromalloy Gas Turbine Corp.*, 83 F.3d 403, 407 (Fed. Cir. 1996), *citing United States v. Dubilier Condenser Corp.*, 289 U.S. 178, 187 (1933); *Standard Parts Co. v. Peck*, 264 U.S. 52, 59–60 (1924). "When the purpose for employment thus focuses on invention, the employee has received full compensation for his or her inventive work." *Id.* (citation omitted). To apply the hired-to-invent doctrine, a court must "examine the employment relationship at the time of the inventive work to determine if the parties entered an implied-in-fact contract to assign patent rights." *Id.* "[S]tate contract principles provide the rules for identifying and enforcing implied-in-fact contracts." *Id.* "The existence of an implied-in-fact contract to assign inventive rights is a question of fact." *Id.* at 408.

Akona asserts that if Pedersen has any rights in the '891 patent as a joint or sole inventor, he is required to assign those rights to Akona based on an implied-in-fact contract. Having found no Minnesota case law directly on point, Akona contends that the facts in the present case are nearly identical to the facts in *Teets*, a case applying Florida law. In *Teets*, the Federal Circuit found an implied-in-fact contract of assignment where Teets undertook a project to develop a one-piece leading edge for turbine blades. *Id.* at 408. The Court noted that Teets spent 70% of his time on the project, invented a solution, and reduced the invention to practice using the employer's resources. *Id.* Further, the Court noted that the employer paid for the prosecution of a patent application and that Teets acknowledged his employer's role in the development of the invention. *Id.*

17

Pedersen asserts that the hired-to-invent defense does not apply because the parties executed an express contract precluding the transfer of Pedersen's intellectual property rights to Akona.  Pedersen cites *Deane v. Hodge*, 27 N.W. 917, 918 (Minn. 1886), for the proposition that, in the absence of an express agreement, Minnesota courts will imply a contract to pay a royalty for the use of the invention if there is evidence that the inventor intended to be compensated for the use of his invention.  Pedersen also asserts that genuine issues of material fact exist regarding whether the hired-to-invent defense applies. Pedersen relies on *Banks v. Unisys Corp.*, 228 F.3d 1357, 1359 (Fed. Cir. 2000), in which the Federal Circuit held that summary judgment was erroneously granted under the hired-to-invent doctrine where the employee-inventor refused to sign an agreement assigning his inventive rights to his employer when he began employment and again when he left his employment.

The Court rejects Pedersen's assertion that hired-to-invent defense is inapplicable. In the previous section, the Court rejected Pedersen's assertion that the parties executed an express contract precluding the express or implied assignment of Pedersen's intellectual property rights.  The Court also finds that Pedersen's reliance on *Deane* is misplaced.  In *Deane*, the plaintiff was hired and compensated for his work as a director and president of a company.  *Deane*, 27 N.W. at 918.  Plaintiff, however, was also the patentee of certain harvesting machines that the company for which he worked manufactured and sold.  *Id.*  The *Deane* court held that the question of whether the plaintiff implied that the company's use of his patent with or without compensation was a question for the jury to consider.  *Id.* at

18

921.  Here, Pedersen was specifically hired to add super-absorbent to Kleen Sweep and was compensated for that work, unlike the plaintiff in *Deane* who earned salaries for his positions as director and president but was not compensated for the company's use of his inventions.

Finally, the Court rejects Pedersen's assertion that genuine issues of material fact exist regarding whether the hired-to-invent defense applies.  The facts in the present case are distinguishable from those in *Banks*, because Pedersen never refused to assign his rights.  Assuming Pedersen has any rights in the '891 patent, the Court finds that, as a matter of law, Pedersen is required to assign those rights to Akona based on an implied-in-fact contract.  Here, the undisputed facts show that Akona hired Pedersen for the sole purpose of developing a commercially viable floor-sweeping compound using super-absorbent. Pedersen spent all of his time as an employee of Akona working on that project and was compensated for his work at $25 per hour.  Pedersen performed some initial work at his own lab, but completed testing at Akona using its raw materials, mixers, and Hodge's input. (Pedersen Dep. at 31-59.)  Additionally, Akona paid for the patent prosecution costs and Pedersen was aware of the patent prosecution.  (*Id.* at 112.)  Further, Pedersen participated in the patent prosecution without disputing that Hodges should be listed as an inventor. Based on the record before the Court, any interest Pedersen has in the '891 patent must be assigned to Akona as a matter of law.  Furthermore, given Akona's sole ownership of the '891 patent, all claims for damages based on the patent are dismissed.  Accordingly, the Court finds that summary judgment in favor of Akona is appropriate on Counts 3–6 and 9

for patent infringement, unjust enrichment, implied contract, conversion, and respondeat superior.

## IV.    Shop Rights[2]

Alternatively, Akona asserts that even if Pedersen were the sole inventor and rightful owner of the '891 Patent, Akona can exploit the patent freely because it acquired a shop right.  A shop right is a common law right that entitles an employer to use an invention patented by one or more of its employees without charge and without liability for infringement when the circumstances demand it under principles of equity and fairness. *McElmurry v. Arkansas Power and Light Co.*, 995 F.2d 1576 (Fed. Cir. 1993) (citations omitted).  In determining whether an employer has acquired a shop right in a patented invention, the court looks at the totality of the circumstances on a case-by-case basis at such factors as the circumstances surrounding the development of the patented invention and the inventor's activities respecting that invention, once developed, to determine whether equity and fairness demand that the employer be allowed to use that invention in his business.  *Id.* at 1582.  Courts have considered the following factors:  "the contractual nature of the relationship between employer and employee, whether the employee consented to the employer's use of the invention, and whether the employee induced,

---

2        In addition to asserting that Akona acquired a shop right, Akona asserts that Pedersen's conduct prior to this lawsuit demonstrates the grant of an implied license to Akona to manufacture and sell Kleen Sweep.  Akona contends that an implied license analysis extends beyond a shop rights analysis to examine the overall course of conduct between the parties.  The Court does not reach Akona's implied license argument because

(Footnote Continued on Next Page)

acquiesced in, or assisted the employer in the use of the invention." *Id.* (quoting Rosenberg, *Patent Law Fundamentals*, § 11.04, 11–20 (1991)).

Based on the totality of the circumstances, the Court finds that, under principles of equity and fairness, Akona acquired a "shop right" to use Pedersen's invention.  The Court agrees with Akona that both the implied license and equitable estoppel rationales for finding a shop right are present here.  Pedersen granted Akona an implied license because Pederson was employed by Akona specifically to add super-absorbent to Kleen Sweep and was paid $25 per hour for his services.  Additionally, Akona supplied the raw materials for the Kleen Sweep product on which Pederson worked.  Pedersen also spent at least 40% of his time working at Akona's facility.  (Pedersen Dep. at 79.)  And Akona also paid for the prosecution of the patent.

The Court also finds that Akona acquired a shop right by estoppel.  Here, it is undisputed that Pedersen intended that the outcome of the project was that Akona would make and sell Kleen Sweep with the added ingredient of super-absorbent.  (Pedersen Dep. at 89.)  Pedersen also never indicated to Akona that it could not manufacture Kleen Sweep without accounting to him in the form of a commission or royalty.  (Pedersen Dep. at 89, 91.)  Accordingly, the Court finds that as a matter of law, Akona acquired a shop right to use the invention.

The Court rejects Pedersen's assertion that Akona is barred from asserting the shop

---

(Footnote Continued From Previous Page)
the Court finds that Akona acquired a shop right to use Pedersen's invention.

rights defense because Akona has "unclean hands." Pedersen contends that Akona may not seek equitable relief from the Court because Akona has unclean hands. Specifically, Pedersen asserts that Akona "stole" Pedersen's invention and submitted a false declaration to the PTO claiming that Hodges was the sole inventor. (Plaintiffs' Memorandum in Opposition to Defendants' Motion for Partial Summary Judgment at 39.) Pedersen also contends that the evidence supporting Pedersen's fraud claim further establishes that Akona had unclean hands. Pedersen contends that Hodges defrauded Pedersen into assisting with the patent prosecution by "promising to add Pedersen as an inventor." (*Id.* at 40.)

Akona cites *Hruska v. Chandler Assocs., Inc.*, 372 N.W.2d 709, 715 (Minn. 1985), for the proposition that the unclean hands doctrine is only applicable where the conduct is unconscionable by reason of a bad motive or the result is unconscionable. Akona further asserts that the evidence fails to establish bad motive on Hodges' part and that Pedersen suffers no unconscionable result. Finally, Akona asserts that Pedersen's fraud claim is not supported by admissible evidence and that Pedersen cannot establish damages.

The Court finds that Pedersen has not established that Akona is barred by the unclean hands doctrine from asserting a shop rights defense. Pedersen has not produced evidence that Hodges' was acting with a bad motive. Here, the unrebutted evidence shows that Hodges believes that he is the inventor of the patent. Further, Pedersen suffers no unconscionable result because Pedersen did not take action to secure patent rights. Pedersen agreed to assist Hodges in prosecuting the patent in January of 2000, a year and a half after Akona first sold Kleen Sweep Plus. At that time, Pedersen would have lost the

22

ability to patent his alleged invention because of the one-year on-sale bar under 35 U.S.C. § 102(b).

Finally, Pedersen's allegations of fraud do not establish that Akona had unclean hands. Here, Pedersen's allegation of fraud is that Hodges told him "we're working on it" in response to Pedersen's telling Hodges that Pedersen should be named on the patent. (Pedersen Dep. at 119.) In order to establish fraud, Pedersen must show: (1) a false representation of a material fact; (2) made with knowledge of the falsity or made without knowing whether the statement was true or false; (3) made with the intention to induce plaintiffs to act in reliance on the statement; (4) that the representation caused plaintiffs to act in reliance; and (5) pecuniary damage as a result of the reliance. *Specialized Tours, Inc. v. Hagen*, 392 N.W.2d 520, 532 (Minn. 1986). Akona asserts that Pedersen's claim relies on inadmissible hearsay and that Pedersen cannot establish damages. The Court agrees and finds that Pedersen's fraud claim does not establish a basis for applying the unclean hands doctrine. Accordingly, Akona is entitled to summary judgment on Counts 3–6 and 9 for patent infringement, unjust enrichment, implied contract, conversion, and respondeat superior on this alternative basis.

As an additional separate alternative ground for granting summary judgment on all claims for damages related to the '891 patent, Akona asserts that Pedersen cannot demonstrate that Hodges is not at least a joint inventor of the '891 patent. And because Hodges is a joint inventor, Akona asserts that it can exploit the '891 patent without accounting to Pedersen pursuant to 35 U.S.C. § 262, which provides that "each of the joint

23

owners of a patent may make, use, offer to sell, or sell the patented invention . . . without the consent of and without accounting to the other owners." The Court does not reach this additional alternative argument, having already found, on two alternative bases, that Akona is entitled to summary judgment on Pedersen's claim for damages related to the '891 patent.

### Conclusion

Accordingly, **IT IS HEREBY ORDERED THAT:**

1.      Defendants' Motion for Partial Summary Judgment on All Claims Except Joint Inventorship (Doc. No. 15) is **GRANTED**.

     a.      Counts 3 through 12 of the Complaint are **DISMISSED WITH PREJUDICE**.


Dated:  April 19, 2006                    s/Donovan W. Frank
                                          DONOVAN W. FRANK
                                          Judge of United States District Court